# 16-1715

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

❖◆❖

RYAN DUFORT,

*Plaintiff-Appellant,*

—against—

CITY OF NEW YORK, JOSEPH MAROTTA, JAE SHIM, THOMAS CONFORTI,
WILLIAM SCHMITTGALL, JOHN and JANE DOE 1 through 10,

*Defendants-Appellees,*

RICHARD A. BROWN, PATRICK O'CONNOR, MICHAEL VOZZO,

*Defendants.*

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

EDWIN G. SCHALLERT
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000

*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................1

ARGUMENT ......................................................................5

I. The District Court Erred in Determining that Probable Cause Existed to Arrest and Imprison Mr. Dufort as a Matter of Law. ..................5

    A. A Material Factual Dispute Exists Regarding the Nature of Ms. Park's Identification, Which, in Any Event, is Insufficient to Form the Basis of Probable Cause. ......................................5

    B. Mr. Dufort's Presence at the Karaoke Club Wearing a Maroon-Colored Shirt is Insufficient to Constitute Probable Cause. ...............10

    C. The Additional Facts Cited by Defendants Are Insufficient to Support a Finding of Probable Cause, Either Before or After the Institution of Criminal Proceedings in this Case. ................15

    D. Defendants Fail to Address the Evidence Known to the Defendant-Officers at the time of Mr. Dufort's Arrest that Undermines the Existence of Probable Cause. ..................18

    E. Defendants Fail to Address the Suggestiveness of the Lineup. ..........19

II. The Individual Officers are Not Entitled to Summary Judgment Based on Qualified Immunity. ..................................................22

III. Material Disputed Facts Preclude Dismissing Mr. Dufort's Malicious Prosecution Claim on Summary Judgment. ..................................23

IV. The Improper Police Procedures in this Case Gave Rise to Claims for Deprivation of the Right to a Fair Trial and to Substantive Due Process. ......................................................................27

    A. Material Factual Disputes Exist Regarding the Claim for Violations of Substantive Due Process. ..............................27

    B. Material Factual Disputes Exist Regarding Whether Mr. Dufort Was Denied the Right to a Fair Trial. ..................................28

CONCLUSION ................................................................29

# TABLE OF AUTHORITIES

**CASES**

*Ackerson v. City of White Plains*, 702 F.3d 15 (2d Cir. 2012) ................................22

*Allianz Ins. Co. v. Lerner*, 416 F.3d 109 (2d Cir. 2005)..........................................17

*Blake v. Race*, 487 F. Supp. 2d 187 (E.D.N.Y. 2007) .............................................26

*Caldarola v. Calabrese*, 298 F.3d 156 (2d Cir. 2002)..............................................8

*Colon v. City of New York*, 455 N.E.2d 1248 (N.Y. 1983) ...............................24, 25

*Devenpeck v. Alford*, 543 U.S. 146 (2004) .............................................................14

*Dinler v. City of New York*, No. 04-CV-7921(RJS)(JCF), 2012 WL 4513352
    (S.D.N.Y. Sept. 30, 2012)................................................................................11, 23

*Frederick v. New York City*, No. 11-CV-469(JPO), 2013 WL 310441
    (S.D.N.Y. Jan. 24, 2013)........................................................................................24

*Greene v. United States*, 13 F.3d 577 (2d Cir. 1994) .............................................16

*Hargroves v. City of New York*, 411 F. App'x 378 (2d Cir. 2011)...........................9

*In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129 (2d Cir. 2008)...................16

*Jenkins v. City of New York*, 478 F.3d 76 (2d Cir. 2007) .......................................21

*Jones v. Parmley*, 465 F.3d 46 (2d Cir. 2006).......................................................11

*Mack v. Howard*, No. 11-CV-00303-A, 2014 WL 2708468 (W.D.N.Y. June
    16, 2014) ...............................................................................................................10

*Maldonado v. City of New York*, No. 11 Civ. 3514(RA), 2014 WL 787814
    (S.D.N.Y. Feb. 26, 2014)........................................................................................22

*Maryland v. Pringle*, 540 U.S. 366 (2003) .............................................................11

*Matter of Ryan W.*, 143 A.D.2d 435 (2d Dep't 1988) ..............................................7

*People v. Birmingham*, 261 A.D.2d 942 (4th Dep't 1999).......................................7

*People v. Johnson*, 9 N.E.3d 902 (N.Y. 2014) .......................................................16

*Poventud v. City of New York*, 750 F.3d 121 (2d Cir. 2014) ...................................9

*Raheem v. Kelly*, 257 F.3d 122 (2d Cir. 2001) ......................................................19

*Rounseville v. Zahl*, 13 F.3d 625 (2d Cir. 1994) ...................................................26

*Sanders v. City of New York*, No. 12-CV-113(PKC)(LB), 2015 WL 1469514
    (E.D.N.Y. Jan. 7, 2015) ...............................................................................21

*Shamir v. City of New York*, 804 F.3d 553 (2d Cir. 2015) ....................................14

*Shelden v. Barre Belt Granite Emp'r Union Pension Fund,* 25 F.3d 74 (2d
    Cir.1994) ......................................................................................................28

*Stansbury v. Wertman*, 721 F.3d 84 (2d Cir. 2013) ...................................19, 20, 22

*United States v. Brown*, 644 F.2d 101 (2d Cir. 1981) ............................................7

*United States v. Fisher*, 702 F.2d 372 (2d Cir. 1983).......................................13, 14

*United States v. McDermott,* 918 F.2d 319 (2d Cir. 1990).....................................28

*United States v. Williams*, 596 F.2d 44 (2d Cir. 1979)...........................................7

*Williams v. City of New York*, No. 10-CV-2676 (JG)(LB), 2012 WL 511533
    (E.D.N.Y. Feb. 15, 2012).................................................................................8

*Ybarra v. Illinois*, 444 U.S. 85 (1979) ............................................................11, 23

**OTHER AUTHORITIES**

Fed. R. Evid. 803(3).................................................................................................28

## PRELIMINARY STATEMENT

The brief submitted by Defendants[1] underscores the materiality of one of the central, disputed questions of fact in this case: whether Hwa Young Park, an eyewitness to the fight that broke out at Pastel Karaoke on October 8, 2006, identified plaintiff Ryan Dufort as a participant in that fight or merely observed that one of the participants wore the same color shirt as he did that night. The resolution of this fact was the centerpiece of the District Court's decision granting the City's summary judgment motion, which held that the defendant-officers had probable cause to imprison and arrest Mr. Dufort because Ms. Park "identified [Mr. Dufort], by his clothing, as someone she saw stomping on [the] victims." (SPA-10.) The District Court's fact-finding, impermissible on summary judgment, is unsupported by the record and directly contradicted by Ms. Park's statements.

Instead, the facts viewed in the light most favorable to Mr. Dufort clearly demonstrate that Ms. Park told officers that she recognized the *color* of a shirt worn by one of the participants in the fight—not the shirt itself, nor any other physical characteristic of the person wearing it. A reasonable jury could find that an observation of the color of a piece of clothing cannot form the basis for probable cause to arrest and detain an individual for almost five years.

---

[1] The remaining defendants against whom Mr. Dufort is asserting claims are the City of New York, Joseph Marotta, Jae Shim, Thomas Conforti, William Schmittgall, and John and Jane Doe 1 through 10 (collectively, "Defendants" or "the City").

Although the nature of Ms. Park's observation is the central disputed fact bearing on probable cause, it is not the only one. There are multiple, critical facts in dispute, including:

- Whether Ms. Park was able to distinguish between the multiple people that were present wearing reddish-colored shirts at the time of the assault or instead was unable to discern any identifiable feature of the participant or the piece of clothing other than its color;

- Whether Ms. Park (and if so, when) told prosecutors at the time of the lineup or any time before the trial in this case that she did not recognize Mr. Dufort but instead recognized only the *color* of his clothing as being the same worn by one of the participants;

- Whether officers deliberately constructed the lineup in which Mr. Dufort was the only individual wearing the sole characteristic—the color maroon—that they knew Ms. Park could recognize.

- Whether the prosecutors knew that officers inappropriately constructed Ms. Park's identification of Mr. Dufort in the lineup by having her participate in that lineup even though she had told police that she could only recognize the color of an item of clothing, and Mr. Dufort was wearing that color at the time of the lineup.

Mr. Dufort is entitled to have a jury—not a judge—resolve these factual disputes and determine whether some permutation of the facts constitute probable cause. These factual disputes also preclude a finding on summary judgment that the defendant-officers had qualified immunity to arrest and imprison Mr. Dufort. Instead, a jury, through the use of special interrogatories, should resolve them. Moreover, no reasonable officer could have believed he had probable cause based

on a witness's statement that Mr. Dufort was wearing the same color as one of the participants.

Rather than address the genuine issues of fact that preclude the resolution of Mr. Dufort's claims by summary judgment, the City instead sets forth an often inflammatory version of what happened at the karaoke bar on the night in question. It is no wonder they do. The standard for probable cause requires greater precision than arresting and imprisoning a teenager simply because he was at a bar when a fight broke out and happened to be wearing the same color shirt that a witness observed was worn by one of the participants.

Defendants fail to explain how Mr. Dufort's mere presence could support probable cause for assault or murder. Moreover, Mr. Dufort has always, and readily, admitted that he was at the karaoke bar on the night in question. He has equally consistently maintained that he did not participate in the assault. And although Mr. Dufort candidly told officers he was carrying a pipe that night, contrary to the City's presentment of the evidence, no one observed him using the pipe or heard him say that he used the pipe. Far from contradicting his statements, surveillance footage supports that when Mr. Dufort heard about the fight, he left an inner karaoke room, walked past the fight, and left the karaoke bar. Indeed, the timing of his actions, drawn from the surveillance footage available to police

officers before they arrested Mr. Dufort, places him at the area where the fight broke out for no more than 35 seconds.

Defendants also fail to address the numerous facts available to the officers when they were first investigating the case that show that Mr. Dufort was just a 15-year-old caught in the wrong place at the wrong time with the wrong people. First, Ms. Park had only seconds in which to internalize the stressful and traumatic scene, watching her friends being beaten, unfolding in front of her. There were ten to twenty participants in the fight, and even more present at the karaoke club. These circumstances significantly reduce the reliability of any identification she may have made.

Second, at least one other individual wearing a reddish-colored shirt and carrying a bat is visible in the surveillance videos alongside other participants in the fight, and there are several others who were at the karaoke bar wearing reddish-colored shirts the same night. There is no video footage of the fight itself, and much of the footage that is in the record is grainy or discolored. These facts render Ms. Park's recognition of a reddish-colored shirt insufficient to sustain a finding of individualized probable cause specific to Mr. Dufort.

Third, of *six* eyewitnesses to view a lineup of Mr. Dufort, only *one*, Ms. Park, was able to identify him, and she did so only after telling police that she recognized the color of his shirt, and only after police placed Mr. Dufort in the

lineup wearing the *exact same color* shirt. Defendants do not deal with the evidence that undercuts their case and do not even attempt to defend the improper and suggestive lineup in which the defendant-officers placed Mr. Dufort.

Given the significant factual disputes in this case—and the District Court's improper resolution of those disputes on summary judgment—this Court should vacate the District Court's judgment. Doing so will allow a jury to decide the facts that bear on whether he was wrongfully arrested without probable cause and tragically held in prison for a crime of which he was found innocent. The facts viewed in the light most favorable to Mr. Dufort establish that the officers did not have probable cause to arrest Mr. Dufort based on Ms. Park's recognition of the color of one of the participant's shirts. They did not have probable cause to continue holding Mr. Dufort after they conducted a classically suggestive lineup. And they continued to lack probable cause to imprison Mr. Dufort for the following five years of his life.

## ARGUMENT

I.   **The District Court Erred in Determining that Probable Cause Existed to Arrest and Imprison Mr. Dufort as a Matter of Law.**

A.   **A Material Factual Dispute Exists Regarding the Nature of Ms. Park's Identification, Which, in Any Event, is Insufficient to Constitute Probable Cause.**

Defendants assert in their brief—without any basis in the record—that "the eyewitness Park identified Dufort as one of the assailants from the surveillance

images, telling the police that he stomped on the victims." Br. for Appellees, Dkt. #56 ("Defs.' Br.") at 22. This statement is false or, at the very least, strongly disputed. The District Court made the same error. Instead, and as set forth in the record, Ms. Park told the police when initially viewing images from surveillance videos from the karaoke bar that she recognized the *color* of the shirt Mr. Dufort was wearing to be the same color as that of one of the participants. (A166 at 150:5-12; A167 at 155:4-11; A176-78 at 176:3-177:23; A448-49 at 154:2-155:11.) The narrowness of this comment means that not only did Ms. Park not recognize or identify any of Mr. Dufort's facial features at the time she viewed the surveillance videos, she also did not recognize his sweatshirt or any other physical characteristic specific to Mr. Dufort. The City's recurring reference to a "red hoodie" is their testimony, not the testimony of Ms. Park. Defs.' Br. at 4.

The cases on which the City relies, and with which we do not disagree, merely stand for the proposition that an eyewitness identification can form the basis for probable cause even though the witness did not view the facial features of the suspect. Defs.' Br. at 23. But these cases do not make the inferential leap the City asks this Court to make: they do not support the finding that the recognition of a *color of a piece of clothing* is sufficient to form the basis for probable cause in this case. In other words, they do not suggest that eyewitness identification can form the basis of probable cause even though the witness did not view the facial

features of the perpetrator *or any other* characteristic specific to the suspect, apart from the color of a piece of clothing.

For example, in *Matter of Ryan W.*, although the witness-officer did not see the perpetrator's face, he did identify the perpetrator's race, height, and weight, in addition to recognizing the perpetrator's clothing and baseball hat. 143 A.D.2d 435, 436-37 (2d Dep't 1988). The court found that probable cause existed on these facts because "[a] *combination* of details excluding facial features can reveal a person's identity as surely as a person's face." *Id.* at 437 (emphasis added); *see also United States v. Williams*, 596 F.2d 44, 46-47, 49 (2d Cir. 1979) (witness identified perpetrators based on height, weight, and apparel, including straw hats); *United States v. Brown*, 644 F.2d 101, 103 (2d Cir. 1981) (witness identified perpetrator in an in-court identification based on voice, which was "only one of the many items of evidence" connecting the witness with the crime); *People v. Birmingham*, 261 A.D.2d 942, 942 (4th Dep't 1999) (witness identified perpetrator after seeing him in the neighborhood and by the "distinctive clothing he wore during previous visits to the bar that day and at the time of the robbery").

Although the City asserts that "[t]he standards for relying on an identification are even more generous when it comes to determining whether there is probable cause for an arrest," it failed to identify a single case that holds that an eyewitness's recognition of the *color* of a piece of clothing alone can support a

finding of probable cause.  Defs.' Br. at 23.  There is no such case because the identification of the color of an item of clothing "is not really an identification at all."  *Williams v. City of New York*, No. 10-CV-2676 (JG)(LB), 2012 WL 511533, at *4 (E.D.N.Y. Feb. 15, 2012) (finding a witness's statement that a suspect "more closely resembles the perpetrator than other individuals" insufficient to give rise to probable cause when viewing the evidence in the light most favorable to the plaintiff).  Ms. Park's statement does not speak to any of Mr. Dufort's characteristics:  not his face, his height, his weight, his race, his voice, his gait, or even a description of the type of clothing he was wearing.

Defendants also argue that information provided to officers by Ms. Park is more likely to be accurate because she had no motive to lie.  *See* Defs.' Br. at 22 (citing, e.g., *Caldarola v. Calabrese*, 298 F.3d 156, 163 (2d Cir. 2002)).  This may be true, but it misses the point:  Ms. Park's truthfulness has never been at issue.  It is the nature and reliability of what she saw and the circumstances in which she saw it that undercut the City's dependence on her statements to establish probable cause.  *Williams*, 2012 WL 511533, at *4 ("While an unequivocal identification is generally sufficient to establish probable cause, an identification that is tentative or uncertain may, on its own, be insufficient.") (collecting cases).  Ms. Park spoke to officers after a long and traumatic night, one in which she watched two of her

friends being assaulted in a chaotic scene marked by strangers running and fighting around her.  (A113-15 at 75:23-76:9, 76:23-77:2; A441 at 104:4-24.)

Her vantage point was naturally limited as she was only in the area where the fight was ocurring for a short period of time.  Indeed, Mr. Dufort was only present in that same area for fewer than 35 seconds.[2]  This space of time, given the conditions that were present, strongly suggest that, to the extent Ms. Park's comments can be construed as any identification linking Mr. Dufort to the assault at all, that identification was unreliable and made without sufficient opportunity for her to view Mr. Dufort.  *Cf. Hargroves v. City of New York*, 411 F. App'x 378 (2d Cir. 2011) (holding that a witness's identification of a suspect after the witness suffered facial injuries and experienced trauma supported probable cause only because he made the identifications "without reservation" and "assured" officers he could make the identification); *see also Poventud v. City of New York*, 750 F.3d 121, 139-40 (2d Cir. 2014) (Lynch, J., concurring) ("Well-known scientific evidence gives us sound reasons to believe that eyewitnesses generally, and violent-crime victims specifically, are not always reliable observes or reporters.").

---

[2]    This time is calculated based on time stamps from the surveillance videos in the record. *Compare* (A501,'Front Desk of Bar' at 136:55-137:06) *with* (A501,'Inside Hallway' at 25:31-25:38) (the individuals entering the hallway immediately before and after Mr. Dufort enter the room where the fight occurred in the same order) *and* (A501, 'Front Outside Entrance View of Karaoke Bar' at 2:20-2:30.).  Mr. Dufort enters the room at 4:10:19 a.m., and can be seen exiting the bar at 4:10:54 a.m.

Ms. Park's statements to the police were thus insufficient on which to form the basis for the arrest and five-year detention of Mr. Dufort.

**B.    Mr. Dufort's Presence at the Karaoke Club Wearing a Maroon-Colored Shirt is Insufficient to Form the Basis of Probable Cause.**

The City argues that there could be no mistaking Ms. Park's recognition of the color of a piece of clothing as an identification of Mr. Dufort because the "surveillance footage had significantly narrowed the universe of possible suspects." Defs.' Br. at 24. The surveillance footage did not "narrow" the universe of suspects; it established who was present at the karaoke bar that night, a fact which is not in dispute. (A290; A329.) Indeed, far from supporting the City's case, the surveillance footage in fact establishes that there were multiple people wearing maroon at the karaoke bar on the night of the fight, including at least one other individual wearing a maroon-colored shirt seen with others implicated in the assault and wielding a bat. (A501, 'Front Desk of Bar' at 136:47-136:53.) The City, like the District Court, fails to draw reasonable inferences from the video in Mr. Dufort's favor. *See Mack v. Howard*, No. 11-CV-00303-A (F), 2014 WL 2708468, at *1 (W.D.N.Y. June 16, 2014) ("[E]ven when there is a video, courts must still draw reasonable inferences in the non-moving party's favor.").

In any event, it is axiomatic that an individual's mere presence at the time and place of a crime, even if that individual is wearing a color similar to that described by an eyewitness as worn by a participant, does not constitute probable

cause.  Indeed, an entire body of caselaw soundly rejects that proposition.

Presence—though a relevant factor—has never been the standard for probable

cause, nor should it, particularly in a large group setting like the one in this case.[3]

As explained in our opening brief, this is so because probable cause must be

*particularized*; "mere propinquity to others independently suspected of criminal

activity does not, without more, give rise to probable cause." *Ybarra v. Illinois*,

444 U.S. 85, 91 (1979); *see also Maryland v. Pringle*, 540 U.S. 366, 371 (2003)

("[T]he substance of all the definitions of probable cause is a reasonable ground for

belief of guilt, and that belief of guilt must be particularized with respect to the

person to be searched or seized." (internal quotation marks and citation omitted)).

Courts in this Circuit routinely reject the idea that "group probable cause"

can serve as a substitute for probable cause particular to the individual being

arrested.  *See, e.g.*, *Dinler v. City of New York*, No. 04-CV-7921(RJS)(JCF), 2012

WL 4513352, at *4 (S.D.N.Y. Sept. 30, 2012) (citing *Jones v. Parmley*, 465 F.3d

46 (2d Cir. 2006)).  These cases hinge on whether officers had "the ability to

identify" those individuals actually committing a crime.  *Parmley*, 465 F.3d at 60

(finding that no officer could have reasonably arrested protesters, even assuming

---

[3]   Defendants misleadingly cite, in support of the existence of probable cause, the fact that
"[t]wo individuals familiar with Dufort viewed the footage and supplied the police with his
name."  *See* Defs.' Br. at 2.  This fact only confirms that Mr. Dufort was present on the night
in question—a fact that has never been in dispute.  The same is true of Mr. Dufort's candor
to police in telling them that he was present at the karaoke bar.  (A86.)

that some of them violated the law, when the officers could not specifically identify the people who had done so).

The officers did not have the ability to identify Mr. Dufort. Ms. Park recognized a color, not an individual. There were at least two individuals, Mr. Dufort and one other, wearing maroon at the karaoke bar when the fight occurred and who were seen with others implicated in the assault. (A501,'Front Desk of Bar' at 136:47-136:53.) The videos depict this other individual holding a bat and entering the room where the fight occurred *before* Mr. Dufort and leaving it *after* him. (*Id.*, 'Hallway Entrance' at 1:49:40-1:50:11.)

The City argues that "the presence of the male wearing the red button-down shirt" does not "negat[e] probable cause." Defs.' Br. at 26. But the City misunderstands the point. The existence of another—and indeed, multiple—potential suspects may not necessarily negate probable cause; it shows, however, that there was never probable cause to arrest Mr. Dufort in the first place. The police had no information to determine whether or not the participant wearing maroon recognized by Ms. Park was Mr. Dufort, the other individual clearly visible on video cameras wearing the same color and carrying a bat, or yet another, unidentified person who may have been wearing a red top, but taken it off at various points in the night (as did Mr. Dufort).

This Circuit has made clear that "[i]n determining whether probable cause exists to believe that a particular person has committed a given crime . . . where the information possessed by the officers could have applied to *any of a number* of persons and did not reasonably *single out* from that group the person arrested the arrest was not made with probable cause." *United States v. Fisher*, 702 F.2d 372, 375 (2d Cir. 1983); *see also id.* at 375-76 (collecting cases). The officers in *Fisher* had arrested a black male after he emerged from a backyard close to where they had identified a group of three or four black males as suspects in a bank robbery. *Id.* at 373-74. The defendant, who emerged "fairly simultaneously" with one of these suspects, was arrested and identified by a teller as a participant in the robbery. *Id.* at 373-75. Despite this circumstantial evidence, this Court reversed the district court's finding and held that there was no probable cause to arrest the defendant because the officers "had only the most general description of the robbers that would have fit [the defendant]." *Id.* at 377.

The same is true here. Ms. Park recognized a color, not Mr. Dufort, and multiple people were present the night of the assault wearing that color, including another individual carrying a bat and clearly present for the fight. (A166 at 150:5-12; A501, 'Front desk of bar' at 136:47-136:51; A501, 'Hallway entrance' at 1:50:00-1:50:08.) As in *Fisher*, the officers did not reasonably single out Mr. Dufort. *Id.* at 375.

The City's arguments that Mr. Dufort was distinguishable from this other individual because the other individual was wearing a button-down shirt, rather than a hoodie, and had short, spiky hair fall short.  Defs.' Br. at 25& n.2.  First, Ms. Park did not tell police when viewing surveillance images that she recognized a "hoodie," nor did she make any comment about the fit or fabric of the clothing apart from the fact that it was reddish in color.  (*See, e.g.*, A437 at 97:8-21).  As this Court has held many times, "[p]robable cause is determined on the basis of facts 'known to the arresting officer at the time of the arrest.'"  *Shamir v. City of New York*, 804 F.3d 553, 557 (2d Cir. 2015) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)).

Second, it is immaterial whether Ms. Park could distinguish Mr. Dufort from the other individual based on hair type.  The record contains no testimony from Ms. Park—much less contemporaneous documentation by the defendant-officers in this case—that she told police about this potential distinction at any point prior to the trial in this case.  (*See* A172-73 at 165:24-166:13.)  Statements Ms. Park made years later in a deposition cannot now be imputed as knowledge that the officers had when they arrested and imprisoned Mr. Dufort.  (A527; A534.)  Moreover, Mr. Dufort was wearing a hat at the time of the lineup, so hair could not have factored into Ms. Park's identification of him at that time.  (A214.)

**C.** **The Additional Facts Cited by Defendants Are Insufficient to Support a Finding of Probable Cause, Either Before or After the Institution of Criminal Proceedings in this Case.**

The additional factors cited by the City to prop up their argument that police had probable cause to arrest and hold Mr. Dufort for five years in pre-trial detention do not withstand scrutiny.

Defendants cite to statements allegedly made by an individual named Tom Yoon to police claiming that Mr. Dufort had told him that "[p]eople don't fuck with you when you are in GS" and that Mr. Dufort had tried to recruit Yoon to the gang GS. Defs.' Br. at 29; (A88.). Defendants do not even attempt to explain the relevance of this statement, nor can they. The City's repeated references to the "Ghost Shadows" gang not only are irrelevant but are also inflammatory; this Court should disregard them. Mr. Dufort stated that he "had heard" that certain members of the group present at the karaoke bar were affiliated with the gang Ghost Shadows and that he did not know whether the group was known for committing crimes or getting into fights. (A370-71 at 41:14-42:22.) To the extent that the City attempts to connect Mr. Dufort's statements to those of Tom Yoon, and rely on some involvement of Mr. Dufort with the Ghost Shadows group in support of its claim that probable cause existed to arrest Mr. Dufort, any such involvement is a disputed fact. (A293, ¶ 33; A331-32, ¶ 33.) At any rate, a person's mere suggested involvement with a gang is not probative of the

commission of an offense and cannot constitute probable cause to arrest. *See, e.g.*, *People v. Johnson*, 9 N.E.3d 902, 903 (N.Y. 2014) (finding that officers did not have probable cause to arrest reputed gang members based on that reputation alone).

Second, Defendants fail to connect the fact that Mr. Dufort had a pipe at the bar with the crimes charged in this case. Nobody in this case has alleged that Mr. Dufort used a pipe during the attack. (A436-37 at 96:17-97:7; A420.) Indeed, Ms. Park testified during the grand jury proceedings in this case that she saw people holding pipes, but not using them to hit the victims. (A496 at 65:15-21.) Defendants nonetheless assert this evidence "would have established probable cause to arrest him for a crime, regardless of whether he was charged for that offense." Defs.' Br. at 28. However, Defendants nowhere explain what that other crime would be, what the elements of it are, and how there would have been probable cause to establish each of the elements of this unspecified crime, such as intent.[4] The same weaknesses identified as to the offense that was charged would

---

[4] Moreover, the City did not raise this argument in its summary judgment briefings before the district court, and accordingly have waived making it here. *See Greene v. United States*, 13 F.3d 577, 586 (2d Cir. 1994) ("[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal."); *see also In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133 (2d Cir. 2008) ("'The circumstances normally do not militate in favor of an exercise of discretion to address . . . new arguments on appeal' where those arguments were 'available to the [parties] below' and they 'proffer no reason for their failure to raise the arguments below.'" (quoting *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 114 (2d Cir. 2005) (alteration and quotation in original)).

presumably apply to any other offense, and the evidence discussed below would also presumably undermine probable cause as to any such unspecified offense.

Third, the City argues that Mr. Dufort's statements somehow "bolster[] the officers' reasonable belief that he had committed a crime" and were "inconsistent with the surveillance footage." Defs.' Br. at 29. Again, Defendants fail to explain how this is so. Mr. Dufort has consistently maintained that he was present, which is confirmed by the surveillance footage. (A86.) He has also consistently maintained that, although he saw others participating in the fight, he did not do so and instead passed by the fighting to exit the bar. (A86-87.) Again, the surveillance footage supports this assertion, given that there was at *most* 35 seconds between when Mr. Dufort left the inner karaoke hallway and when he exited onto the street.[5] The more natural reading of this sequence is that Mr. Dufort heard about the fight after it broke out, and—scared and the youngest in the group—immediately left the bar.

Fourth, the City relies on the testimony of two other individuals charged with participating in the fight at the karaoke bar: Jonathan Putt and Sebastian Yoon. First, Putt never identified Mr. Dufort as a participant in the fight; in fact, he testified at trial that he *did not know* where Mr. Dufort was at the time of the

---

[5] The fact that Mr. Dufort made a "pact" with others who were involved in the fight not to mention names if they spoke to the police also does not implicate him as a participant in any wrongdoing, given that Mr. Dufort was present on the night in question and witnessed individuals who he knew participated in the fight.

fight. (A333 ¶ 43(e); A413 at 1580:3-6.) Second, Yoon stated, 14 months after Mr. Dufort was imprisoned, that he "thought" Mr. Dufort had punched one of the victims only after he was coerced on the record into doing so; the prosecutor, the judge, *and his own counsel* pressured him to provide testimony against Mr. Dufort. (A248-49 at 9:14-10:6; A416 at 11:14-20, 23-24; A250 at 15:23-25.) The City completely ignores these facts. And neither these, nor the ones already mentioned, are sufficient to support a grant of summary judgment that there was probable to arrest and detain Mr. Dufort for almost five years.

### D. Defendants Fail to Address the Evidence Known to the Defendant-Officers at the time of Mr. Dufort's Arrest that Undermines the Existence of Probable Cause.

In focusing their attention on facts that bear little relevance to the central issues in this case, Defendants fail to address the evidence ignored by the officers that undermine their assertion that they had probable cause to arrest Mr. Dufort.

This evidence includes:

- Ms. Park's failure to specifically identify Mr. Dufort as a participant in her initial statements to the police (A454-55 at 169:8-169:13);

- The fact that five eyewitnesses were unable to identify Mr. Dufort as a participant in the fight and that Ms. Park only did so after the improper and suggestive lineup conducted by the defendant-officers in this case (A332, ¶ 36; A463-67; A469, ¶¶ 8-10);

- That there were multiple people on the night in question at the karaoke bar wearing reddish colored shirts (A291, ¶ 19; A501, 'Front desk of bar' at 136:47-136:53; A526 at 3);

- That at least one of these individuals entered the room where the fight broke out wielding a bat. *Id.*

In failing to address these facts, like the District Court in this case, Defendants ignore the requirement that review for probable cause must encompass all relevant facts "to ensure the court has a full sense of the evidence that led the officer to believe that there was probable cause to make an arrest." *Stansbury v. Wertman*, 721 F.3d 84, 93 (2d Cir. 2013) (quotation marks and citation omitted).

### E. Defendants Fail to Address the Suggestiveness of the Lineup.

The City does not even attempt to defend the suggestive nature of the lineup that the defendant-officers conducted after Ms. Park told them that she could not identify Mr. Dufort by anything other than the color of his sweatshirt, and in which they insidiously placed Mr. Dufort wearing the *exact same* maroon hoodie he wore in surveillance footage and was the *only* individual in the lineup wearing maroon. Defs.' Br. at 31-32; (A-448-49 at 154:12-155:11; A-332, ¶ 36; A-471.). It is fundamental that the reliability of a lineup is undermined when police distinguish the suspect in that lineup by "the outstanding feature of the assailant's appearance" to the victim," particularly where that same feature was also "an integral part of the description . . . provided to the police." *Raheem v. Kelly*, 257 F.3d 122, 137 (2d Cir. 2001) (citation and quotation marks omitted). But that is exactly the kind of lineup the defendant-officers conducted in this case. It is a material disputed fact whether the officers purposely highlighted Mr. Dufort by

placing him in the lineup wearing the sole characteristic—the color maroon—that they knew Ms. Park could recognize.

Rather than dealing with these facts, defendants argue that the suggestive nature of the lineup is immaterial because "ample evidence" implicated Mr. Dufort. Defs.' Br. at 32. But Ms. Park's identification of Mr. Dufort in the lineup was the only piece of evidence presented to the grand jury directly implicating Mr. Dufort as a *participant* in the assault.[6] (A494 at 63:10-24; A462.)

Defendants also contend that the cases upon which Mr. Dufort relies in arguing that the lineup was improperly suggestive use a different standard than that for probable cause. Defs.' Br. at 31-32. But under either standard, admissibility in court or use to establish probable cause, an identification cannot be "so flawed" or "so defective" that it no longer has probative value. *See Stansbury v. Wertman*, 721 F.3d 84, 91 n.7 (2d Cir. 2013) (identification cannot be "so flawed that [it] could not contribute to a finding of probable cause"); *Jenkins v. City of New York*, 478 F.3d 76, 93 (2d Cir. 2007) (lineup identification cannot be "so defective that probable cause could not reasonably be based upon it"). The lineup in this case

---

[6]  Defendant Marotta also implicated Mr. Dufort before the grand jury based on Ms. Park's lineup identification, but, perhaps unsurprisingly, omitted the fact that Ms. Park was only able to identify a participant by clothing color. (A479 at 73:1-22)  He testified similarly at the *Wade* hearing. (A399-400, ¶¶ 13-23.)  Yoon's testimony at his guilty plea that he "thought" Mr. Dufort punched one of the victims—in addition to being objectively unreasonable because it was the product of coercion—came *fourteen months* after Mr. Dufort was first arrested. (*See generally* A415-23; A420 at 15:23-25.)

was that defective, and notably, defendants make no argument whatsoever that it was not. *Jenkins*, 478 F.3d at 93.

Finally, defendants take issue with Mr. Dufort's "contention that the officers would not have conducted the lineup if they believed that they had probable cause to arrest without it." Defs.' Br. at 32. Defendants argue that the officers in this case had the right—and indeed the duty—to continue investigating a suspect even if the officers already had probable cause to arrest a suspect. *Id.* at 32-33. This is undoubtedly true. It is not the lineup itself but the circumstances of this lineup— and specifically, that Mr. Dufort was the sole person wearing maroon despite Ms. Park's statements to the officers that the color maroon was the only characteristic she could recognize—that strongly suggest the officers conducted it to inappropriately create probable cause. *See Sanders v. City of New York*, No. 12-CV-113(PKC)(LB), 2015 WL 1469514, at *12 (E.D.N.Y. Jan. 7, 2015) (finding that where officers had reason to question the reliability of an identification—and particularly where officers should have known that the eyewitness "had little opportunity to view [the suspect] at all, no less his face"—the identification of that suspect in a subsequent photo array is not relevant to probable cause). The deliberateness of the officers' conduct and the circumstances in which Ms. Park identified Mr. Dufort are material disputed facts that should be resolved by a jury.

**II. The Individual Officers are Not Entitled to Summary Judgment Based on Qualified Immunity.**

Given the numerous factual disputes detailed above that remain in this case, this Court should not grant the defendant-officers qualified immunity at the summary judgment stage. *See Maldonado v. City of New York*, No. 11 Civ. 3514(RA), 2014 WL 787814, at *10 (S.D.N.Y. Feb. 26, 2014) (holding that a grant of qualified immunity is inappropriate on summary judgment when that analysis is "inextricably entwined with the merits"). Instead, these factual disputes should be resolved by a jury through the use of special interrogatories.

Moreover, arguable probable cause exists only where it was "objectively reasonable for the officer to believe that probable cause existed." *Ackerson v. City of White Plains*, 702 F.3d 15, 21 (2d Cir. 2012) (internal quotation marks and citation omitted). No reasonable officer could have found that probable cause existed to arrest and detain Mr. Dufort based on one eyewitness's recognition of the color of the back of a maroon top, particularly when that eyewitness had only a limited opportunity to view the alleged participants of the crime. *See Stansbury v. Wertman*, 721 F.3d 84, 90 (2d Cir. 2013) (it is clearly established law that a victim's identification is sufficient to provide probable cause unless there are "circumstances that raise doubts as to the victim's veracity" (internal quotation marks and citation omitted)).

Moreover "it was clearly established by [the time of the fight] that an officer must have individualized probable cause to arrest an individual and that mere proximity to illegal conduct does not establish probable cause with respect to an individual." *Dinler*, 2012 WL 4513352, at *11 (citing *Ybarra*, 444 U.S. at 91). The only piece of evidence directly linking Mr. Dufort—and not some other individual wearing maroon—as a participant in the assault was the lineup, which, as explained above, was too flawed for any reasonable officer to rely on it.

### III. Material Disputed Facts Preclude Dismissing Mr. Dufort's Malicious Prosecution Claim on Summary Judgment.

Defendants argue that Mr. Dufort's malicious prosecution claim fails because there was probable cause for the prosecution, Defs.' Br. at 37, but, as demonstrated above and at length in our initial submission to this Court, there was no probable cause to arrest Mr. Dufort, nor did any additional facts establish probable cause after Mr. Dufort was arrested.

The City does not explain how the circumstantial evidence presented to the grand jury against Mr. Dufort could support an indictment without the testimony regarding the unduly suggestive lineup. Indeed, the City cites to only one other specific piece of evidence presented to the grand jury in support of this argument: the "testimony of another perpetrator implicating Dufort." Defs.' Br. at 39-40. To the extent this sentence is referencing Putt's testimony, as previously noted, it fails

to address the fact that this testimony did *not* implicate Mr. Dufort. (A333 ¶ 43(e); A413 at 1580:3-6.)

The City also argues that "an unduly suggestive identification alone does not come close to showing that the police defendants deliberately acted with bad faith," a requirement to overcome the presumption of probable cause that arises from a grand jury indictment, but fails to cite any support for that broad statement. *Id.* The actions of the defendant-officers in this case fall squarely within the requirement to overcome the presumption of probable cause on a summary judgment motion: in addition to the questions of fact surrounding the conduction of the lineup, the officers' failure to inform the prosecutor or the grand jury about the limited nature of Ms. Park's identification of Mr. Dufort provides ample "evidence establishing that the police witnesses have not made a complete and full statement of facts either to the Grand Jury or to the District Attorney . . . [and] that they have withheld evidence or otherwise acted in bad faith." *Colon v. City of New York*, 455 N.E.2d 1248, 1250-51 (N.Y. 1983) (internal citations omitted); *see also Frederick v. New York City*, No. 11-CV-469(JPO), 2013 WL 310441, at *4 (S.D.N.Y. Jan. 24, 2013) (stating in the hypothetical that "if police officers intentionally arranged a blatantly and improperly suggestive eyewitness identification and a grand jury then issued an indictment solely on the basis of that

identification . . . surely that would defeat the indictment-related presumption of probable cause under *Colon* for purposes of a malicious prosecution claim").

The City's argument that Mr. Dufort's malicious prosecution claim fails for lack of causation on the ground that Ms. Park told prosecutors before the beginning of criminal proceedings that she recognized Mr. Dufort by the color of his clothing and not any other facial or physical characteristic is—once again—mere recitation of the City's version of the facts. Defs.' Br. at 40-41. Whether, and when, Ms. Park made such statements to the prosecutors is a material disputed fact. Far from "steadfastly maintain[ing] that the prosecutors knew that she could not recognize Dufort by his face," Defs.' Br. at 42, Ms. Park clearly stated at her deposition in this case:

> Because, you know, you understand how I spoke about this incident with other people on many occasions, on many times. To tell you the truth, I don't exactly remember what I exactly said at that time because I could not get my mind together because of the situation. And when I went to the court and I spoke at that time, if I want to talk about that as well now. You understand how you heard, just like now, that what I said at the time of the trial, I was waffling back then. And even now, I was saying different things now. I am saying different things now.

(A158 at 142:9-25.) This statement, in which she makes clear that she cannot recall what she told to whom and when, was made through Ms. Park's Korean interpreter—unlike her answers upon which the City relies, which were given in

yes/no format and in response to leading questioning.[7] (A158-59.) It is thus unclear, and a disputed fact, as to whether Ms. Park ever told prosecutors before the trial in this case that she only recognized a maroon-wearing participant—not Mr. Dufort specifically. To find otherwise constitutes an inferential leap *against* Mr. Dufort, which is impermissible at the summary judgment stage. *See Rounseville v. Zahl*, 13 F.3d 625, 630 (2d Cir. 1994) (A "sparse factual record . . . when viewed most favorably to the [non-moving party] does not eliminate the possibility that the defendants initiated the criminal proceeding without probable cause.").

Finally, the City's argument that Mr. Dufort cannot sustain a malicious prosecution claim against Defendants Shim, Schmittgall, and Conforti because they did not initiate the criminal proceedings also fails. Defs.' Br. at 43. These officers were instrumental—along with Defendant Marotta, who swore to the criminal court complaint—in encouraging the prosecutors to prosecute Mr. Dufort. (A223). In *Blake v. Race*, the court found that the police officers met the "initiation" element when they encouraged an informant to pick out the plaintiff/arrestee by looking at and leaning towards the direction of the plaintiff/arrestee during a lineup, and then subsequently fed false information to an

---

[7] This problem, of course, is amplified by the officers' failure to document any of Ms. Park's statements in "Complaint – Follow Up Informational Reports," more commonly referred to as a DD5. (A402, ¶¶ 27-28.) As explained in our opening brief, the absence of DD5s in this case memorializing witness statements is "highly unusual." (*Id.*, ¶ 29).

"unknowing D[istrict] A[ttorney]."  487 F. Supp. 2d 187, 195-96, 211 (E.D.N.Y. 2007).  Here, the officers contributed to the suggestive lineup that led to the prosecution of Mr. Dufort—or, at the very least, their precise involvement is a question better left for determination by a jury.  (A133 at 47:14-16; A70; A293, ¶ 34; A294, ¶ 38); Defs.' Br. at 44.  Additionally, Shim testified during trial that his specific role in this case was to assist Marotta with the homicide investigation, which included showing video surveillance to Hwa Young Park.  (A393 at 1803:20-21; A395 at 1806:4-6.)  Park was shown these videos shortly before she identified Dufort during the lineup, which clearly influenced her identification. (A-451 at 165:2-13; A-453 at 167:2-8.)

IV. **The Improper Police Procedures in this Case Gave Rise to Claims for Deprivation of the Right to a Fair Trial and to Substantive Due Process.**

A. **Material Factual Disputes Exist Regarding the Claim for Violations of Substantive Due Process.**

The City's only argument that Mr. Dufort cannot sustain a due process claim in this case—besides that there is no probable cause, which is addressed above—is that Mr. Dufort cannot point to evidence other than an affidavit from his trial court attorney that the defendant-officers acted in bad faith.  Defs.' Br. at 45.  However, there are material disputed facts regarding whether the defendant-officers acted in bad faith when they conducted a suggestive lineup to create probable cause against Mr. Dufort when there otherwise was none.  Moreover, even if trial counsel's

statements supporting this claim—that officers knew Mr. Dufort was not involved but wanted him to be a witness in the case—constitute hearsay, they would likely be admissible as an exception to the rule against hearsay as a "statement of the declarant's then-existing state of mind (such as motive, intent, or plan)." Fed. R. Evid. 803(3); (A469, ¶ 12.). The detective telling trial counsel that officers planned to detain Mr. Dufort for the purpose of using him as a witness constitutes a "then-existing state of mind" by relaying the officer's intent for a planned course of action. *Shelden v. Barre Belt Granite Emp'r Union Pension Fund,* 25 F.3d 74, 79 (2d Cir.1994) ("[U]nder [Rule 803(3)], the existence of the plan or intention may be proven by evidence of the *person's own statements* as to its existence." (citation and internal quotation marks omitted)). The bad faith prong of a substantive due process violation has been met. *United States v. McDermott,* 918 F.2d 319, 325 (2d Cir. 1990).

### B. Material Factual Disputes Exist Regarding Whether Mr. Dufort Was Denied the Right to a Fair Trial.

The City contends that the officers did not physically create any falsified evidence, and that Mr. Dufort thus does not have a "viable denial of fair trial claim based on a fabrication-of-evidence theory." Defs.' Br. at 46. Again, this assertion neglects the questions of fact surrounding whether the defendant-officers deliberately arranged Ms. Park's viewing of a lineup in which Mr. Dufort was the only person wearing the *exact color* shirt Ms. Park had recognized, and in which

he wore the *exact shirt* Ms. Park had seen in surveillance footage shown to her by the defendant-officers. (A294 ¶37; A469, ¶¶ 8-10; A-471; A171 at 164:5-25.) The defendant-officers did so knowing that Ms. Park had been only able to recognize the participant by the color of his shirt, and only after they had primed her to identify Mr. Dufort rather than the color of a piece of clothing. (A173 at 166:14-24; A-448-49, 154:16-155: 03.) Mr. Dufort's fair trial claim cannot be dismissed as a matter of law.

## CONCLUSION

For the reasons set forth above, and those set forth in our earlier briefing, the judgment of the District Court should be vacated and Mr. Dufort's claims should proceed to determination by a jury.

Respectfully Submitted,

DEBEVOISE & PLIMPTON LLP

By:    /s/ Edwin Schallert

Edwin G. Schallert
Kayla Bensing
919 Third Avenue
New York, New York 10022
Telephone: (212) 909-6000
egschallert@debevoise.com

*Attorney for Plaintiff-Appellant Ryan Dufort*

Dated: February 8, 2017

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

Pursuant to the Federal Rules of Appellate Procedure, the undersigned counsel hereby certifies that this brief complies with Rule 32 and the word court limitation of Local Rule 32.1(a)(4)(B).  As measured by the word processing system used to prepare this brief, there are 6,953 words in this brief.

This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure.  This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman, 14-point type.

By: ___/s/ Edwin Schallert___

Edwin G. Schallert
919 Third Avenue
New York, New York 10022
Telephone: (212) 909-6000
egschallert@debevoise.com

*Attorney for Plaintiff-Appellant*
*Ryan Dufort*

Dated: February 8, 2017